# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re:**<br><br>TRACY LEHMAN and<br>NANETTE LEHMAN, husband<br>and wife,<br><br>**Debtors.** | **Bankruptcy Case<br>No. 04-00078** |

_____

| | |
|---|---|
| LES BOIS LEASING, INC., an<br>Idaho corporation,<br><br>**Plaintiff,**<br><br>**vs.**<br><br>TRACY LEHMAN and<br>NANETTE LEHMAN, husband<br>and wife,<br><br>**Defendants.** | **Adv. Proceeding No. 04-6136** |

_____

### MEMORANDUM OF DECISION
_____

**Appearances:**

      D. Blair Clark, RINGERT, CLARK, CHARTERED, Boise, Idaho,
Attorney for Plaintiff.

MEMORANDUM OF DECISION - 1

Howard R. Foley, FOLEY, FREEMAN, BORTON & STERN, CHARTERED, Meridian, Idaho, Attorney for Defendants.

Plaintiff Les Bois Leasing, Inc. leased cattle to Defendants, Chapter 7 Debtors Tracy and Nanette Lehman. When Defendants' dairy operation failed, they liquidated their herd, including Plaintiff's cattle. However, there is a discrepancy over the number of cattle leased and their disposition. Plaintiff alleges that, under 11 U.S.C. § 727(a)(5), these discrepancies are grounds to deny Defendants a discharge. Alternatively, Plaintiff seeks to have Defendants' debt under the cattle leases excepted from discharge under 11 U.S.C. § 523(a)(4) or (a)(6).[1]

The Court conducted a trial on April 14, 2005.[2] After considering the evidence and testimony, arguments of the parties, and relevant legal authorities, the Court makes the following findings of fact and conclusions of law. Fed. R. Bankr. P. 7052.

---

[1] Previously, Defendants filed a motion for summary judgment. Docket No. 8. The Court granted that motion in part, leaving only Plaintiff's claims under §§ 523(a)(4), (a)(6), and 727(a)(5) for trial. Order, Docket No. 21.

[2] During closing arguments, Plaintiff asked the Court, pursuant to Fed. R. Bankr. P. 7015 and Fed. R. Civ. P. 15(b), to amend their complaint to conform to the proof and to deny Defendants' discharge under § 727(a)(3). Plaintiff's complaint includes a claim under this Code section, but Plaintiff abandoned that claim during the summary judgment phase. Permitting such an amendment under these facts would be prejudicial to Defendants. Plaintiff's motion is denied.

MEMORANDUM OF DECISION - 2

# FACTS[3]

In connection with Defendants' motion for summary judgment, the Court previously examined many of the undisputed facts regarding Plaintiff's and Defendants' business transactions. Docket No. 22. Rather than repeat those details here, with its prior decision as a basis, the Court will set out only those facts relevant to Plaintiff's remaining claims.

Plaintiff is a leasing business. Defendants owned and operated Lehman Dairy, Inc. (the "dairy"). The dairy leased equipment from Plaintiff in the 1990s, and on December 1, 1999, both Defendants signed a "continuing guaranty" in favor of Plaintiff, Ex. 3, which made Defendants liable for obligations under the leases.

During the summer of 2002, on behalf of the dairy, Mr. Lehman executed two written cattle leases with Plaintiff. The first, dated June 20, 2002, provided for the lease of forty-five Holstein cows; the second lease, dated July 8, 2002, covered an additional fifty Holstein cows. Importantly, both leases required the dairy to maintain the number of cows stated in the lease, notwithstanding

---

[3] The Court's findings of fact are based in part on its opportunity to observe the witnesses testify, its assessment of their credibility, and its assignment of the appropriate weight to be given to such testimony.

MEMORANDUM OF DECISION - 3

losses due to culling, death, or disease. With respect to offspring, the leases provided:

> 4. TITLE: The Dairy Livestock and their Progeny shall remain the property of Lessor. Lessee will defend Lessor's ownership against claims or creditors including without limitation all charges and taxes but excluding taxes measured by Lessor's income.
>
> . . . .
>
> 10. PROGENY: All Heifer Calves shall be and will remain the property of Lessor. Branding or eartagging shall be accomplished at the appropriate time per item # 14. Disposition of Progeny shall be as follows:
>
> 10. A. Heifer Calves are to be raised and retained for use as replacement livestock. They will only be sold at such time as there is an excess of Heifer Calves in relation to need. Funds from the sale of Heifer Calves will be deposited into an interest bearing account to be established at Lessee's bank. Funds will be withdrawn only by dual signature by check with Lessor and Lessee' signatures. Funds will be withdrawn only for purchase of replacement stock pertinent to this lease. Ownership of all Heifer Calves will remain with the Lessor during the term of this lease. Ownership of all Heifer Calves in excess of the original Lease amount shall be passed to the Lessee upon expiration of this lease, excluding early termination or default.

Exs. 1, 2.

MEMORANDUM OF DECISION - 4

In connection with the June lease for forty-five cows, Mr. Lehman arranged for the purchase of forty-five Holsteins from the Vancouver, Washington area. The record shows that the total purchase price for these cows was $64,800. Ex. C. Plaintiff issued a check to fund the purchase of these cows. Ex. D. Neither party disputes that Defendants took possession of these cattle. Mr. Lehman testified that none of the forty-five cows were pregnant at the time of purchase, and in the approximately eighteen months he cared for these cows, they yielded only a few calves.

Regarding the July lease, the parties dispute how many cows were leased. Mr. Ver Mett, Plaintiff's owner and manager, contends Defendants agreed to lease fifty cows for the dairy. He testified that he provided Defendants with $60,000 to purchase the fifty cows. Ex. 8. The parties' lease and a livestock acceptance form signed by both Defendants support Mr. Ver Mett's suggestion that fifty cows were leased.

In contrast, Mr. Lehman testified that the $60,000 Plaintiff provided was not enough to purchase fifty cows because prices in the dairy livestock market were rapidly climbing. Instead, from the money advanced by Plaintiff, on June 25, 2002, Mr. Lehman purchased twenty-nine cows from the Emmett Valley Livestock Auction for a total of $36,980. Ex. A. Then, on July 9, 2002, Mr.

MEMORANDUM OF DECISION - 5

Lehman purchased another twelve cows through the auction for $16,930. Ex. B. Mr. Lehman stated that he then bought another two cows from private sellers for a total price of $3,000. He says he deposited the remaining $3,000 into the dairy's business account, where it was ultimately used to pay operating expenses. According to Mr. Lehman, the July lease, livestock acceptance form and other documents showing that the dairy leased fifty cows were prepared before the cows were actually purchased. These documents were never amended to reflect the true details of the transaction.

While the facts are disputed, on this point, the Court accepts Mr. Lehman's explanation as correct. The Court finds that Mr. Lehman acquired only forty-three cows, not fifty, with the funds advanced by Plaintiff, and that Mr. Lehman spent $3,000 of Plaintiff's funds on dairy expenses, despite the fact those funds had been advanced solely to purchase cattle for the July lease.

Of the forty-one cows Mr. Lehman bought through the auction, all were pregnant at the time of purchase. However, Mr. Lehman testified that many of the cows he purchased had been bred with non-Holstein bulls, and as a result, the cross-bred, heifer offspring they produced were unsuitable for use as replacements for the milking herd. In addition, he testified that several of these leased cows and calves died during the birth process. Mr. Lehman estimated that

MEMORANDUM OF DECISION - 6

this group of cows produced fewer than ten replacement heifers.  Based on his understanding of the lease, Mr. Lehman assumed he was permitted to and did sell the cross-bred heifer calves and bull calves directly to third party purchasers.

All the cows were to be identified with ear tags.  Mr. Lehman combined the eighty-eight cows leased from Plaintiff with another approximately 220 cows he had purchased with financing provided by Wells Fargo Bank.  As milk prices declined, the diary became unprofitable.  Defendants ultimately decided to terminate the dairy operation.  On December 2, 2003, with the prior consent of both Wells Fargo and Mr. Ver Mett, Mr. Lehman had all the animals remaining on his dairy liquidated through sales conducted at the Emmett Valley Livestock Auction.

The record contains two sets of records relating to the herd liquidation. Exhibit 4 is a Seller History Report for the dairy generated by the Emmett Valley Livestock Auction.  This exhibit shows that the dairy sold thirteen cows during the terms of the two leases, but prior to the liquidation.  Plaintiff contends it owned these thirteen cows, but the Court accepts Mr. Lehman's persuasive testimony and other evidence that established these were not Plaintiff's cows.  This report also shows the dairy sold 187 cows on December 2, 2003.  Mr. Lehman testified that this entry refers to the sale of cows subject to Wells Fargo's

MEMORANDUM OF DECISION - 7

lien. A second set of records is also contained in Exhibit 4. These sale records from the auction show fifty-nine cows sold for Plaintiff. Mr. Lehman explained that because Plaintiff owned the leased cattle, their sale and records were separate from those for the cows subject to the Wells Fargo lien.

From the inception of the leases to the liquidation of the herd, Mr. Ver Mett inspected the cows on five occasions: on July 12, 2002; and on July 21, September 27, November 3, and December 2, 2003. None of these inspections gave Mr. Ver Mett cause for concern, although it appears his inspections were cursory at best.

For this same period of time, Mr. Lehman's records disclose that sixty-seven cows died. Ex. H. Mr. Lehman testified to the several and varied reasons the herd experienced this level of death loss. He also testified that this level was consistent with industry standards. These figures as to the extent of cow deaths also generally support a financial statement Mr. Lehman prepared for the dairy and provided to Plaintiff on October 30, 2003. Ex. 7. In this statement, Mr. Lehman reports having 260 milking cows, thirty springers, and a total of ninety heifers in three different age and weight groups. According to his testimony, sixty of the 260 milking cows belonged to Plaintiff.

MEMORANDUM OF DECISION - 8

**DISPOSITION**

**A. Plaintiff's § 727(a)(5) Claim**

Plaintiff's § 727(a)(5) claim, as narrowed by the Court's disposition of Defendants' motion for summary judgment, Docket Nos. 21, 22, is that Defendants have failed to adequately account for bull calf offspring from the leased cattle. A debtor may not receive a discharge if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). But as noted in the Court's decision disposing of Defendants' motion, only the loss of an asset that would have been available to satisfy creditors' claims is actionable. Docket No. 22 at 9–10 (citing *Baker v. Reed* (*In re Reed*), 310 B.R. 363, 369–70 (Bankr. N.D. Ohio 2004); *Pyramid Tech. Corp. v. Cook* (*In re Cook*), 146 B.R. 934, 940–41 (Bankr. E.D. Pa. 1992)).

Plaintiff's position, as articulated by Mr. Ver Mett, is that under the leases, it owned all the leased cattle and all offspring, including the bull calves. If Plaintiff is correct, Defendants' failure to account for the disposition of the bull calves will not support a claim under § 727(a)(5). In other words, since the calves, as Plaintiff's property, would not be an asset available to satisfy the claims of

MEMORANDUM OF DECISION - 9

Defendants' creditors, Defendant need not account for them under this provision of the Code. In this respect Plaintiff's claim fails.

However, even assuming Plaintiff did not acquire ownership of bull calves produced by the leased cows under the leases, the Court concludes discharge should not be denied because the Court considers Mr. Lehman's explanation of the disposition of the calves to be a satisfactory one. *See Leimbach v. Lane* (*In re Lane*), 03.4 I.B.C.R. 213, 215–16 (Bankr. D. Idaho 2003) (finding for debtor on a § 727(a)(5) claim because the debtor's explanation of the disposition of an asset was satisfactory). Mr. Lehman testified that, because he felt he owned them, he sold bull calves born on the dairy to third party purchasers within a few of days of each calf's birth. These sales, and the dairy's consumption of any resulting sale proceeds during its slide into unprofitability, is credible and largely undisputed by Plaintiff.[4]

Under either approach, the Court concludes judgment should be entered in Defendants' favor on Plaintiff's § 727 claim.

### B. Plaintiff's § 523(a)(4) Claim

---

[4] To be clear, the Court was not asked to decide if Defendants' sale of bull calves and cross-bred heifers was a breach of the lease or would support a claim by Plaintiff against Defendants' bankruptcy estate for the value of the calves. Accordingly, the Court expresses no opinion on those questions.

MEMORANDUM OF DECISION - 10

Plaintiff's remaining claim under § 523(a)(4) is for embezzlement. To prevail under § 523(a)(4) based on the debtor's embezzlement, a creditor must show (1) that property was rightfully in the possession of the nonowner-debtor, (2) that the debtor appropriated the property for a use other than the one for which it was entrusted, and (3) circumstances indicating fraud. *See First Delaware Life Ins. Co. v. Wada* (*In re Wada*), 210 B.R. 572, 576 (B.A.P. 9th Cir. 1997); *U-Save Auto Rental of Am. v. Mickens* (*In re Mickens*), 312 B.R. 666, 680 (Bankr. N.D. Cal. 2004); *Kiss Enters., Inc. v. Mirth* (*In re Mirth*), 99.4 I.B.C.R. 148, 151 (Bankr. D. Idaho 1999). In this action, there are two areas requiring the Court's attention. The first involves Defendants' use of Plaintiff's funds; the second focuses on Defendants' disposition of the leased cattle.

### 1. Defendants' use of Plaintiff's funds

Regarding the funds advanced by Plaintiff to purchase cows, there is no dispute that Plaintiff provided Defendants and the dairy with $60,000 to buy cattle under the July lease. And Mr. Lehman admitted that $3,000 of these funds was not used to buy cows, but instead was diverted to fund dairy operations. It therefore appears clear, then, that the first two elements of Plaintiff's claim have been established. Thus, whether Mr. Lehman embezzled these funds turns on

MEMORANDUM OF DECISION - 11

whether there are circumstances indicating fraud. The Court will address Mr. and Mrs. Lehman's conduct separately.

As to Mr. Lehman, one key consideration in the Court's analysis is whether he acted with fraudulent intent. *Transamerica Commercial Fin. Corp. v. Littleton* (*In re Littleton*), 942 F.2d 551, 555–556 (9th Cir. 1991) (noting intent of debtor is an issue in § 523(a)(4) embezzlement analysis). A debtor's intent may be proved by circumstantial evidence. *Johnson v. Davis* (*In re Davis*), 262 B.R. 663, 671–72 (Bankr. E.D. Va. 2001); *Teamsters Local 533 v. Schultz* (*In re Schultz*), 46 B.R. 880, 890–91 (Bankr. D. Nev. 1985) (acknowledging circumstantial evidence may show fraudulent conduct).

Mr. Lehman accepted $60,000 from Plaintiff for the purpose of buying the cattle that the dairy would lease from Plaintiff. With this understanding in mind, Mr. Lehman spent less than the full amount, purchased fewer than the fifty cows specified in the lease and supporting documents, and retained the balance for his dairy's benefit. In his testimony, Mr. Lehman explained that he planned to use the remaining money to buy additional cows once prices dropped. But at some point, Mr. Lehman obviously decided to use Plaintiff's money for unauthorized purposes. Whatever his intent before making that decision, at that instant he decided to take another's property for his own use

MEMORANDUM OF DECISION - 12

under circumstances that were misleading; his conduct and lack of candor caused these deceptive conditions. This constitutes fraudulent circumstances for purposes of this exception to discharge. For these reasons, the Court will enter a judgment in favor of Plaintiff and declare that Mr. Lehman owes Plaintiff a debt in the amount of $3,000 that is excepted from discharge under § 523(a)(4).

Whether a nondischargeable judgment should be entered against Mrs. Lehman is a separate question. Because many exceptions to discharge under § 523(a) are founded upon bad conduct, the creditor must establish its claim against each debtor-defendant. *Wells Fargo Bank Northwest, N.A. v. Covino* (*In re Covino*), 04.3 I.B.C.R. 98, 105 (Bankr. D. Idaho 2004) (discussing a § 523(a)(2) claim). And "[e]xceptions to discharge are strictly construed against plaintiff creditors and liberally in favor of debtors." *Id*. at 103.

Plaintiff did not present any convincing evidence that Mrs. Lehman participated in the embezzlement of the $3,000. While Mrs. Lehman did not testify, Mr. Ver Mett's and Mr. Lehman's testimony indicated that Mr. Lehman was the primary manager and decision-maker for the dairy. The evidence showed that Mrs. Lehman occupied a limited role in running the business, and no information was offered to prove that she was involved in, or even knew about, Mr. Lehman's decision to divert Plaintiff's funds to pay the dairy's expenses. *See*

MEMORANDUM OF DECISION - 13

*La Trattoria, Inc. v. Lansford* (*In re Lansford*), 822 F.2d 902, 904–05 (9th Cir. 1987) (holding that evidence of a spouse's independent conduct supported a judgment against her under § 523(a)(2)(B)). Furthermore, Plaintiff has neither argued, nor is there any evidence to prove, that Mr. Lehman's bad conduct should be imputed to Mrs. Lehman. *See Tsurukawa v. Nikon Precision, Inc.* (*In re Tsurukawa*), 287 B.R. 515, 525 (B.A.P. 9th Cir. 2002) (holding that a debt may be excepted from discharge either when the debtor's conduct is actionable or when another's actionable conduct is imputed under agency/partnership principles).

Absent more proof, the Court declines to order that the $3,000 embezzled from Plaintiff by Mr. Lehman should be excepted from her discharge.

### 2. Defendants' disposition of Plaintiff's cattle

The trial record establishes that Defendants purchased and leased eighty-eight cows from Plaintiff, and later liquidated fifty-nine of those cattle. It is undisputed that the proceeds of that liquidation were received by Plaintiff. Thus, Defendants arguably failed to return twenty-nine cows at the termination of the leases.

As noted above, the Court accepts that these twenty-nine "missing" cows died on the dairy. There appears to be no dispute that Defendants owe Plaintiff the value of these cows; the contest involves whether Defendants'

MEMORANDUM OF DECISION - 14

obligation should be excepted from discharge because of Defendants' embezzlement.

In this regard, the record does not support either the second or third element required for the embezzlement claim. In particular, it is clear that Defendants did not divert these twenty-nine cows to a use other than the one for which they were entrusted.[5] The animals simply died, a sad but sometimes inevitable event in the dairy business, and one contemplated by the leases. Exs. A, B.

Moreover, there is no indication of fraud. Mr. Ver Mett argues that his periodic inspections of the herd and the financial statement Mr. Lehman submitted for the dairy one month before the liquidation prove all the leased cows were on the dairy just prior to liquidation, and therefore, their absence from the auction sale suggests Defendants disposed of them improperly. But Mr. Ver Mett's inspections were so superficial as to have little probative value. And Mr. Lehman's testimony explaining the cattle numbers in the financial statement was persuasive on the point that sixty of the 260 dairy cows disclosed were Plaintiffs.

---

[5] As Mr. Lehman explained without contradiction at trial, there is no "market" for a dead cow. Obviously, dead animals can not be sold for human consumption. And while at some past time the carcass (and hide) could be sold for a minimal amount, those days are gone. The dairy bears the burden of disposing of a dead animal, either by burying it or by hiring another to cart it away.

MEMORANDUM OF DECISION - 15

Admittedly, Mr. Lehman did not maintain detailed death loss records concerning the herd, and what little information he did record was not produced to Plaintiff until this litigation was underway.  But to the Court, while this may show Defendants' books were haphazard and deficient, it does not show fraud.  Defendants did keep crude death loss records that support their explanation and nothing presented to the Court suggests Defendants acted in the shadows of fraudulent circumstances with respect to the cattle shortage of twenty-nine head.

Plaintiff has not shown that Defendants' obligation for the twenty-nine "missing" (or as the Court prefers, "dead") cows should be excepted from discharge under § 523(a)(4).

### C. Plaintiff's § 523(a)(6) Claim

Plaintiff's theory under § 523(a)(6) is that Defendants improperly disposed of the missing cattle and have failed to account for their disposition.  The Bankruptcy Code provides that "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ."  11 U.S.C. § 523(a)(6).  To prove a debtor acted willfully, the creditor must demonstrate the debtor "deliberately or intentionally injured the creditor, and that in doing so, the debtor intended the consequences of his act, not just the act itself."

MEMORANDUM OF DECISION - 16

*Dominguez v. Elias* (*In re Elias*), 03.4 I.B.C.R. 243, 246 (Bankr. D. Idaho 2003). To prove a debtor acted maliciously, the creditor must show the debtor's conduct involved a wrongful act, done intentionally, which necessarily causes injury, and that is done without just cause or excuse. *Id*. As noted in the Court's earlier disposition of Defendants' motion for summary judgment, damage to leased property by a debtor may support a § 523(a)(6) claim. Docket No. 22; *Itule v. Metlease, Inc.* (*In re Itule*), 114 B.R. 206, 210 (B.A.P. 9th Cir. 1990) (holding that the debtor's tortious damage to leased property was willful and malicious under § 523(a)(6)).

Plaintiff argues that the cattle leases should be treated, as a matter of Idaho law, as bailments. Pl.'s Pretrial Mem. at 3–4, Docket No. 26 (citing *Mahoney v. Citizens' Nat'l Bank of Salmon*, 271 P. 935 (Idaho 1928)). Under Idaho bailment law, Plaintiff contends, the burden of proof lies with the bailee, Defendants in this case, to explain the loss of property entrusted to them. *Id*. (citing *Low v. Park Price Co.*, 503 P.2d 291 (Idaho 1972)).

As discussed above, Defendants presented evidence that the twenty-nine cows not sold at the December liquidation sale died. The Court accepts this explanation. And notwithstanding Plaintiff's position regarding the burden of proof under Idaho bailment law, Plaintiff bears the burden of proving that

MEMORANDUM OF DECISION - 17

Defendants willfully and maliciously harmed its property. *See Dominguez*, 03.4 I.B.C.R. at 245–46. As noted in the Court's decision on Defendants' motion for summary judgment, a critical issue in this context is Defendants' subjective intent in handling the cattle.

The record in this case does not establish that Defendants intended to deprive Plaintiff of its cows. While the dairy's financial trouble prompted Defendants to cut back on important professional veterinary services, fall behind on their breeding schedule and curtail normal dairy operations, none of these facts are sufficient to show Defendants intended to kill Plaintiff's cows or to otherwise deprive Plaintiff of its ownership interest. Indeed, Mr. Ver Mett testified that on his drive-by inspections, the dairy operation appeared as he expected it should. This tends to negate any inference that Defendants were managing the dairy with any design to intentionally damage the leased animals. Indeed, both Defendants' and Plaintiff's interests were best served by Defendant's employment of good husbandry practices: the more cows alive and producing milk, the more likely Defendants would profit and Plaintiff would be paid under the leases.

In short, Plaintiff failed to show that either of the Defendants acted with the intent necessary to support its § 523(a)(6) claim for willful and malicious injury.

MEMORANDUM OF DECISION - 18

## CONCLUSION

Plaintiff failed to prove Defendants' discharge should be denied under § 727(a)(5), or that any debt owed by Defendants to Plaintiff arising from "missing cows" should be excepted from discharge under § 523(a)(4) or (a)(6).

However, Plaintiff did adequately establish that Defendant Tracy Lehman embezzled $3,000 of Plaintiff's funds he accepted for the purpose of buying cows by diverting those funds to pay dairy expenses. This debt is nondischargeable under § 523(a)(4).

A separate judgment will be entered.

Dated: May 3, 2005

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge